## CHAPLIN ET AL. v. LEAPLEY ET AL.

[No. 5,351. Filed May 23, 1905.]

1. APPEAL AND ERROR.—*Assignment.—Demurrer to Complaint.—Exceptions to Conclusions of Law.*—Where the facts found specially are the same as alleged in the complaint and answer, exceptions to the conclusions of law and demurrers to the complaint and answer present the same questions. p. 513.

2. PLEADING.—*Complaint.—Quieting Title.—"Cloud on Title."*—In an action to quiet title it is not necessary to allege that the claim made by defendant "is a cloud on the title" where the pleading shows that defendant asserts an unfounded title. p. 514.

3. TRIAL.—*Judgment.—Conclusions of Law.—Special Findings.—Evidence.—Pleadings.—Relations.*—As the judgment is based upon the conclusions of law, which are based upon the special findings, which are established by evidence introduced to sustain the material facts alleged in the pleadings, so a link missed in any part of the chain, if properly questioned, will invalidate the judgment rendered. p. 518.

4. NEW TRIAL.—*Special Findings.—Evidence.*—A new trial will not be granted on account of the failure of evidence to establish a special finding that testator paid the $500 which he owed his wife, where his will required two of his children to pay his widow that sum, making it a charge upon their devises, and where one witness testified that testator had told her on two occasions that he intended for such children to repay such sum. p. 518.

5. EVIDENCE.—*Wills.—Variations of by Parol Testimony.*—Oral testimony is inadmissible to vary or contradict the terms of a will except (1) where there is a latent ambiguity arising *dehors* the will as to the person or subject meant to be described and (2) to rebut a resulting trust. p. 519.

6. SAME.—*Wills.—Payment of Debt by Charge on Devises.*—Where testator bequeathed to his widow $500, the will not disclosing the purpose thereof, and making the payment of same a charge upon devises to two of his children, evidence is competent to show that testator made such bequest to the widow for the payment of a debt of $500 which he owed her. p. 519.

7. WILLS.—*Bequest.—Debt to Legatee.—Payment.*—Where a testator

bequeaths to his creditor a sum of money equal to or greater than the debt he owes, and the will is silent as to its being in payment of such debt, it will be a considered a payment, and such creditor can not take such legacy and also collect the debt.   p. 521.

8.   WILLS.—*Tenancy by Entireties.*—*Devise of Lands Held by.*—Since §2556 R. S. 1881, §2726 Burns 1901, provides that a testator may devise any property descendible to his heirs, and since lands held by him and his wife as tenants by the entirety are not thus descendible, such testator can not devise such lands.   p. 522.

9.   DESCENT AND DISTRIBUTION.—*Tenancy by the Entireties.*—*Husband and Wife.*—Lands held by the husband and wife as tenants by the entirety descend to the survivor, and neither can alone alien or encumber such lands.   p. 522.

10.   WILLS. — *Renunciation of by Widow.* — *Statutes.* — By the act of 1885 (Acts 1885, p. 239, §2666 Burns 1901) a widow who fails to file her renunciation of the provisions made for her by the will thereby elects to accept same in lieu of her statutory rights, unless it clearly appears from the will that testator intended for her to have both.   p. 524.

11.   SAME.— *Election.*— *Equitable Doctrine.*— The doctrine of election as applied to wills is purely equitable, and unless testator has made some beneficial provision for his widow, the doctrine does not apply to her.   p. 524.

From Grant Superior Court; *B. F. Harness,* Judge.

Action by Jacob B. Leapley and another against Nellie Chaplin and others.   From a decree for plaintiffs, defendants Nellie Chaplin and Albert S. Chaplin appeal.   *Affirmed.*

*Custer & Cline,* for appellants.
*St. John & Charles* and *J. D. Conner, Jr.,* for appellees.

MYERS, P. J.—This was an action by appellees against appellants and others, devisees in the will of John W. Flinn, to set aside the will of John W. Flinn so far as by it he undertook to devise to his children certain real estate which he and his childless second wife, Sarah E. Flinn, held by deed from her father as tenants by entireties.   The appellees claim title by deed from said Sarah E. Flinn, executed by her after the death of her husband.   Appellees also by this action seek to quiet their title to the real estate in question.

The complaint is in three paragraphs.   The appellants,

with the other defendants, except Sarah E. Flinn, separately demurred to each paragraph. These demurrers were overruled, and this ruling is here assigned as error by appellants. All of the defendants except appellants and Sarah E. Flinn declining to plead further, judgment was rendered against them quieting the title to the real estate in question in appellees. Sarah E. Flinn filed a separate answer. Appellants filed a joint answer in general denial. Appellant Nellie Chaplin filed a cross-complaint in two paragraphs against appellees, who answered the same in two paragraphs, the first being a general denial. To the second paragraph of answer to the cross-complaint appellant Nellie Chaplin filed a demurrer, which was overruled, and this ruling is also here assigned as error. Reply in general denial by appellant Nellie Chaplin to the second paragraph of answer to her cross-complaint put the cause at issue.

Upon the issues thus formed the cause was submitted to the court for trial, and upon request the court made a special finding of facts and stated conclusions of law thereon, to each of which conclusions the appellants excepted. Judgment was rendered on the special finding of facts and conclusions of law in favor of appellees and against appellants and Sarah E. Flinn. Appellants' motion for a new trial was overruled and this ruling is here assigned as error.

1. The assignment of errors based upon the conclusions of law submitted by the court on its special finding of facts is sufficient to present the alleged errors in overruling the demurrers to each paragraph of the complaint and answer, and it will be unnecessary for us to consider the assignment of errors as to the ruling upon the pleadings. *Indiana, etc., Ins. Co.* v. *Bender* (1904), 32 Ind. App. 287; *Forgy* v. *Harvey* (1898), 151 Ind. 507; *Smith* v. *Wells Mfg. Co.* (1897), 148 Ind. 333; *Woodward* v. *Mitchell* (1895), 140 Ind. 406. Therefore we deem it unnecessary to extend this opinion by stating the substance of each paragraph of the complaint and answer.

2. Appellants specially contend that the second paragraph of complaint is defective, for the reason that it does not aver "that the claim made by the defendants is a cloud on the title to the real estate in controversy." This allegation is unnecessary, and the paragraph is sufficient. *Weaver* v. *Apple* (1897), 147 Ind. 304; *Wilson* v. *Wilson* (1890), 124 Ind. 472.

The special finding of facts, briefly stated, is as follows: On and prior to April 4, 1887, George F. Dunn was the owner in fee of the real estate in controversy, to wit: Lot one, block five, in Clark Wilcutt's addition to the town, now city, of Marion, Grant county, Indiana; Sarah E. Flinn is the daughter of said Dunn, and was on April 4, 1887, the wife of John W. Flinn; said Dunn was on April 4, 1887, indebted to Sarah E. Flinn in the sum of $600 for money borrowed of her by him; on said date Sarah E. Flinn purchased of her father said lot number one for $800, and paid for the same by surrendering said indebtedness and paying $200 in cash, all being her individual money; on said date said Dunn, his wife joining him, conveyed said lot to said Sarah E. Flinn and John W. Flinn, her husband, as tenants by entireties; said Sarah E. Flinn and John W. Flinn, her husband, continued to hold and own said lot as tenants by entireties until June 24, 1893, when said John W. Flinn died testate, leaving said Sarah E. Flinn, his widow, and no children born of their said marriage; on March 8, 1893, said John W. Flinn, executed his last will, which, after his death, and on July 6, 1893, was duly probated in Grant county, Indiana, and recorded in the proper will record in the office of the clerk of the Grant Circuit Court, which will, so far as material here in the decision of this cause, is as follows:

"Item 3. I give and bequeath to my son James E. Flinn my home property, situate on lot thirteen, Turner's addition to the town, now city, of Marion, by said James E. Flinn paying to my wife, Sarah E. Flinn, the sum of $300.

"Item 4. I give and bequeath to my daughter Martha Alice Minor the house and lot, being lot numbered seven in James Thomas' addition to the town, now city, of Marion, by said Martha Alice Minor paying to my wife, Sarah E. Flinn, the sum of $200.

"Item 5. I give and bequeath to my daughter Nellie Flinn, in trust, the south house and south half of lot number one in block number five Wilcutt's addition to the town, now city, of Marion, and also the north house and north half of lot number —— on Gallatin street between Seventh and Eighth streets on the east side of said street; to have and hold as her own during her natural life, and at her death to go to her heirs, if any living, if none, then to go to my heirs equally." .

"Item 7. I give to my beloved wife, Sarah E. Flinn, the north one-half of lot number 1, block number 5, Wilcutt's addition to the town, now city, of Marion, to have and to hold during her natural life, and at her death the property to be sold and $600 of the proceeds to be applied as she may direct, and the balance to be divided between my heirs. I also give to my said wife, Sarah E. Flinn, the personal property we have brought into the house since our marriage, including the horse and buggy and cow."

This will also disposes of other property to other named legatees. Said Sarah E. Flinn did not within one year next after the probate of said will file in the clerk's office of said county any paper or instrument renouncing or accepting said will and the provisions therein; in the year 1887, and during the marriage of said Sarah E. Flinn and John W. Flinn, the latter borrowed from said Sarah E. Flinn $500 in money, and the same remained unpaid at the time of his death; the last illness of said John W. Flinn extended over a period of twenty weeks; during the last twelve weeks immediately before his death his condition was such as to demand constant care and attention both day and night, and that during said twelve weeks said Sarah E. Flinn con-

stantly attended him day and night, and by reason thereof her nervous and physical health and condition was so impaired that for some time after his death she was not in a condition properly to transact business; within ten days after his death the devisees in said will, including said Sarah E. Flinn, went to the court-house and heard the will read; she had never before that time seen said will, and was ignorant of its contents, and from her exhausted condition of mind and body gave little heed to the reading or the terms thereof; the horse and buggy and cow named in said will as devised to her were her separate and individual property; after the purchase of said lot said John W. Flinn regarded and treated the same as the property of said Sarah E. Flinn; in the year 1889 said John W. Flinn erected two dwelling-houses on said lot at an expense of about $1,300, which amount was paid by him; upon the death of said John W. Flinn said Sarah E. Flinn took possession of said lot number one with the improvements thereon, claiming to own the same as the surviving tenant by entirety, and continuously kept possession thereof as owner until the sale thereof to appellees; appellant Nellie Chaplin knew of such exclusive possession, and her claim of ownership, and she had received the rents therefrom ever since her husband's death until said sale, and at no time did the appellant Nellie Chaplin nor any of the heirs or devisees in said will make any claim of right or title to said property until after the sale to appellees on March 6, 1902, that being the time she conveyed the same by deed of general warranty to appellees for $3,000; since the death of said John W. Flinn, and to the knowledge of appellant Nellie Chaplin, she made permanent improvements of the value of $250 on the buildings thereon; a duly certified copy of said will was duly recorded in the recorder's office of Grant county, Indiana, on March 27, 1894, in deed record No. 64, and still remains of record therein; appellees have paid $2,000 of the purchase money for said lot number one; appellees had no actual knowledge

of any claim to said lot number one by appellant Nellie Chaplin, or any of the heirs or devisees in said will, until after they had made such part payment and received the deed for said lot; appellant Nellie Chaplin is the devisee named in the will of John W. Flinn as Nellie Flinn, and is now the wife of Albert Chaplin, and the daughter of said John W. Flinn; the personal property named in item number seven of said will bequeathed to said Sarah E. Flinn was her own separate personal property; said John W. Flinn made no provision by his will or otherwise out of his estate for Sarah E. Flinn; he paid the debt of $500 which he owed to said Sarah E. Flinn for borrowed money by requiring James E. Flinn to pay $300, and his daughter, Martha Alice Minor, to pay the sum of $200; no letters testamentary were ever issued to the executors named in said will, but said executors voluntarily, with the consent of the heirs and devisees named in the will, settled said estate and concluded the settlement thereof on December 6, 1893; on December 2, 1893, said James E. Flinn paid Sarah E. Flinn the sum of $300, as provided by item three of said will; on the same day Martha Alice Minor paid to her $200, as provided in item four of said will, which amounts were accepted and received by said Sarah E. Flinn, who executed receipts to the persons paying the same; no lands were sold for the payment of the debts of said decedent.

Upon the foregoing facts the court concluded the law to be as follows: "(1) That on the death of John W. Flinn, to wit, on the 24th day of June, 1893, Sarah E. Flinn, his widow surviving him, took under the law as tenant by the entirety the title in fee simple in and to the real estate described in plaintiffs' complaint and described as follows: [Here follows description.] (2) That none of the defendants nor cross-complainant in this cause took any interest or title in or to the real estate described in plaintiffs' complaint, by virtue of the last will and testament of said John W. Flinn. (3) That said Sarah E. Flinn, widow

of said John W. Flinn, deceased, from and after the death of her said husband, was the sole owner of the fee-simple title to said real estate in plaintiffs' complaint described, and on the 6th day of March, 1902, by her deed of conveyance, duly conveyed the title to said real estate to the plaintiffs herein, Jacob B. Leapley and Edward E. Leapley. (4) That said plaintiffs, Jacob B. Leapley and Edward E. Leapley, are the owners of the real estate in fee simple described in their complaint, and are entitled to have their title in and to the same quieted."

3. As the conclusions of law must depend upon the finding of facts, so also must the material finding of facts be supported by the evidence, and also be found alleged in the material averments of the pleadings. A failure in either of these particulars will be considered a missing link in the chain supporting the judgment.

4. The question of the sufficiency of the evidence to support the findings is raised by appellants in their motion for a new trial, and in the natural order of events we will consider first the sufficiency of the evidence to support the findings. After a careful reading of the evidence we are unable to point out a single material finding not well supported by the evidence. The appellants, in their very able and exhaustive brief and argument in this case, refer us to one finding only, which they claim the evidence does not support, and that one is number twenty-six, and reads as follows: "Said John W. Flinn paid the debt of $500 which he owed to said Sarah E. Flinn for borrowed money by requiring James E. Flinn, in item three of his will, to pay to his said wife Sarah E. Flinn the sum of $300, and by requiring his daughter, Martha Alice Minor, in item four of his will, to pay to his said wife, Sarah E. Flinn, the sum of $200." In support of this finding Delila Flinn, a witness, and niece by marriage of the decedent, testified that in the fall before John W. Flinn died, in a conversation with him he said, speaking of his wife: "I owe her about $500 that I have used of her

money, and I intend for Jim and Pet to pay that back to her." In another conversation with decedent, in the spring before he died, witness testified that decedent, in speaking of his wife, said: "I used $500 of her money." The two persons spoken of as "Jim" and "Pet" had reference to James Flinn and Martha Alice Minor, persons mentioned in the will. From this evidence, taken in connection with the will and the other evidence in the record tending to support this finding, we think the court was justified in drawing such inferences as would result in the finding made.

5. But appellants insist that the testimony of Delila Flinn was improperly admitted, and, if eliminated, and not considered, the finding would be without support. This contention they endeavor to rest on the well-settled rule many times affirmed by the decisions of our Supreme Court, that parol evidence is not admissible to supply or contradict, enlarge or vary, the words of the will, or to explain the intention of a testator, with two exceptions specified by Chancellor Kent: (1) Where there is a latent ambiguity arising *dehors* the will as to the person or subject to be described, and (2) to rebut a resulting trust. *Whiteman* v. *Whiteman* (1899), 152 Ind. 263; *Hartwig* v. *Schiefer* (1897), 147 Ind. 64.

6. In the case at bar, as will presently be seen, testator by his will attempted to devise property not the subject of such disposition. This fact does not appear on the face of the will, but does arise when the terms of the will are actually applied to the property attempted to be devised, and the exact facts existing are disclosed. It also appears from the language of the will that Sarah E. Flinn was to receive $500 in money and a life estate in a portion of the property now in question. Appellees in their third paragraph of complaint charge that the money provision made by testator in favor of Sarah E. Flinn was simply a repayment of $500 in money theretofore by him borrowed from her; while appellant Nellie Chaplin in her cross-complaint avers that

Sarah E. Flinn had accepted the will by her failure to renounce it within one year after the death of testator, and was therefore bound by the provision therein made for her benefit.

Our statute of descent (§2666 Burns 1901, Acts 1885, p. 239) provides: "If lands be devised to a woman, or a pecuniary or other provision be made for her by the will of her late husband, in lieu of her right to lands of her husband, she shall take under the will of her late husband, unless she shall make her election whether she will take the land so devised, or the provision so made," etc. Therefore, in this particular case it is not a question of intention on the part of the testator, but a question of fact relative to what he has actually done in the way of making provision for his wife in lieu of her right in his lands, or in lieu of her interest in any property so devised by him. On the question of the admission of parol proof to show this fact, we are reminded of the well-settled principle of law stated in Daugherty v. Rogers (1889), 119 Ind. 254, 3 L. R. A. 847: "Whenever, therefore, in applying a will to the objects or subjects therein referred to, extrinsic facts appear which produce or develop a latent ambiguity, not apparent upon the face of the will itself, since the ambiguity is disclosed by the introduction of extrinsic facts, the court may inquire into every other material extrinsic fact or circumstance to which the will certainly refers, as well as to the relation occupied by the testator to those facts, to the end that a correct interpretation of the language actually employed by the testator in his will may be arrived at."

To the law thus announced in the Daugherty case we may add from the opinion in the case of Whiteman v. Whiteman, supra: "In giving an interpretation to a will, and to discover the intention of the testator, the court always has the right to put itself in the place of the party, and then see how the terms of the instrument affect the property or subject-

matter. With this view, evidence must be admissible of all the circumstances surrounding the author of the instrument, subject, however, to those limitations which are always observed when this rule is applied."

With the above propositions before us firmly settled, it may be said, as appellants contend, that parol proof can not be admitted to explain the intention of a testator or supply an imperfection in a written will. But the testimony of Delila Flinn is not subject to the objection waged against it. The most that can be said for this testimony is that it tends to prove the relation of debtor and creditor at the time of the execution of the will between testator and his wife, and that he expected James E. Flinn and Martha Alice Minor to pay the debt. True, it was an admission of the testator, and against his interest, which, if not true, would not likely have been made, yet as it does not supply or contradict, enlarge or vary, the words of his will, nor explain his intention, and upon the theory that appellees were entitled to have the court know the exact relation existing between testator and his wife, as to all facts to which the will certainly refers, the evidence was admissible.

7. Testator provides for the payment of $500 to his wife—$300 by James E. Flinn and $200 by Martha Alice Minor. This $500 is not given in the form of a bequest, but in the form of a direction to his son and daughter, recipients of his bounty, to pay his wife certain sums aggregating $500. The will is silent as to testator's intention or reason for requiring such payments. It has been held by a long line of well-considered decisions and is recognized by all text-writers on the subject of wills that "A bequest by the testator to his creditor of a legacy as great as, or greater than, the debt, without any mention of the debt in the will, is regarded as a satisfaction of the debt, and the creditor can not take both debt and legacy." *Reynolds* v. *Robinson* (1880), 82 N. Y. 103, 37 Am. Rep. 555; *Cloud* v. *Clinkin-*

beard's Executor (1848), 47 Ky. 397, 48 Am. Dec. 397;
1 Underhill, Wills, §450; 18 Am. and Eng. Ency. Law
(2d ed.), 769.

8.    Turning to the alleged errors predicated upon the con-
clusions of law, the complaint avers, and the court so found,
and the appellants concede, that the title to the real estate in
question was on April 4, 1887, taken and continuously held
by the decedent and his wife, Sarah E. Flinn, as tenants by
the entireties until the death of the decedent.    It also ap-
pears that while the title to the real estate in question was
so held the decedent attempted to dispose of the same by will.
Therefore the first question, did the decedent have the power
so to dispose of this real estate?

As bearing upon the question of disposition of property
by will, §2726 Burns 1901, §2556 R. S. 1881, provides:
"All persons, except infants and persons of unsound mind,
may devise, by last will and testament, any interest, descend-
ible to their heirs, which they may have in any lands, tene-
ments, and hereditaments, or in any personal property, to
any person or corporation capable of holding the same."
This statute, in plain and concise language, not only pro-
vides who may dispose of property by will by stating who
can not do so, but requires the donor to have some interest in
the subject of disposition which would be "descendible" to
his heirs in the absence of a will.    Applying this test to the
case at bar, under the facts as stated, would the real estate in
question have descended to the heirs of the decedent at his
death?    Certainly not.

9.    It seems to be the settled law in this State that real es-
tate held by husband and wife by entireties, upon the death
of one the survivor takes the whole.    And this is upon the
theory, as said by this court in the case of *Humberd* v. *Col-
lings* (1898), 20 Ind. App. 93:    "At common law they
were one person, and when realty vested in them they took
as one person.    Where real estate vested in them both
equally with a third party, they together took but one share

or moiety, and the third party took the other share or moiety. The common-law rule has not been changed by statute in this State, in so far as it relates to tenancies by entireties. As stated in 9 Am. and Eng. Ency. Law, 850, the rule is: 'That moiety, or in case the whole property vests in them alone, the whole, they take as one person, they take but one estate as a corporation would take. In case of realty, they are seized, not *per my et per tout,* as joint tenants are, but simply *per tout;* both are seized of the whole, and each being thus seized of the entirety, * * * and the estate is an estate by entireties.' * * * Neither tenant by the entirety can convey his or her interest in the estate so as to affect their joint use of the property during their joint lives, or to defeat the rights of the survivor upon the death of either of the cotenants. Neither can there be partition between tenants by the entireties. Upon the latter proposition the case of *Chandler* v. *Cheney* [1871], 37 Ind. 391, is very instructive. One of the cotenants by the entireties can not convey or encumber the estate so held without the consent of the other, and neither is the estate liable for the debts of one of the tenants. If one of such cotenants dies, the estate continues absolute in the survivor. The estate by entireties is inseverable, can not be partitioned; and neither husband nor wife can alone affect the inheritance, the survivor's right to the whole." Citing authorities.

In the same case the court quoted with approval from Preston, Estates, 131, as follows: "The husband and wife have not either a joint estate, a sole or several estate, nor even an estate in common. From the unity of their persons by marriage, they have the estate entirely as one individual, and on the death of one of them, the entire tenement will, for all the estate of which they are seized in this manner, belong to the survivor, without the power of alienation or forfeiture of either alone, to prejudice the right of the other."

The case of *Humberd* v. *Collings, supra,* and the authori-

ties therein cited, in our opinion, fully answers the question now under consideration in favor of appellees, and is virtually decisive of this case. The principles above announced are further sustained by authority. *Wilkins* v. *Young* (1895), 144 Ind. 1, 55 Am. St. 162; *Waters* v. *Lyon,* (1895), 141 Ind. 170; Schouler, Wills, §28; *Gillan's Executors* v. *Dixon* (1870), 65 Pa. St. 395; *Duncan* v. *Forrer* (1813), 6 Binney (Pa.) 193; 30 Am. and Eng. Ency. Law (2d ed.), 615.

10.    We come now to the last question in the decision of this cause: Did Sarah E. Flinn, by her failure to renounce the will of James W. Flinn, subject the real estate in question to the terms thereof? Our statute (§2666 Burns 1901, Acts 1885, p. 239) makes it the duty of a widow, in case she desires to take under the law instead of under her husband's will, to do certain affirmative acts, and if she fails to comply with these requirements within the time prescribed by the statute, by operation of law she is held to have accepted the provisions made for her under the will, which are to be in lieu of her rights to the lands of her husband. *Miller* v. *Stephens* (1902), 158 Ind. 438; *Dudley* v. *Pigg* (1898), 149 Ind. 363; *Wilson* v. *Wilson* (1896), 145 Ind. 659; *Snodgrass* v. *Meeks* (1895), 12 Ind. App. 70.

11.    The doctrine of election, as applied to all instruments of donation, is based upon the broad principle of equity, "that he who accepts a benefit under the instrument shall adopt the whole, conforming to all its provisions, and renouncing every right inconsistent with it." One of the substantial reasons for the rule, as announced in the books, requiring the adoption of the whole instrument, is that the legatee receives a beneficial interest by virtue of the instrument under which the claim is made. It is not for the courts to say whether the benefits received are greater or less under the one than under the other, but it must appear in the case of wills that some beneficial provision is made therein in order to evoke the equitable doctrine of election; for without

something presented by the will to accept or reject, there would be nothing to stimulate action.

According to the record in this case Sarah E. Flinn received no beneficial interest whatever through the will of her husband, and for her to go through the form of rejecting it would be an idle ceremony and for no purpose. The reasoning adopted in the case of *Cameron* v. *Parish* (1900), 155 Ind. 329, is clearly against the principle of law appellants would have us adopt.

We find no error in the record. Judgment affirmed.