Draper *et al. v.* Morris *et al.*

Finding no available error in the record, the judgment is affirmed.

Filed March 27, 1894.

◆

No. 16,676.

DRAPER ET AL. *v.* MORRIS ET AL.

DECEDENT'S ESTATE.—*Election by Widow.*—*Requisites of.*—A widow, in making her election to take under the law, must do so in substantial compliance with the statute, *i. e.*, she must make her election in writing, acknowledged, filed, and recorded, within the specified time.

From the Washington Circuit Court.

*J. A. Zaring* and *M. B. Hottel,* for appellants.

*J. H. Masterson, S. H. Mitchell* and *R. B. Mitchell,* for appellees.

HACKNEY, J.—On the 3d day of May, 1886, one Thomas Morris died testate in Washington county, leaving surviving him his wife, Hannah Morris, and leaving no children.

The second item of his last will was as follows: "As to my farm in said county, to wit, 84 acres, * * * I make the following disposition of same: I devise said farm and land to my brother, Micah Morris, to be his in fee simple, reserving to myself and my wife, Hannah Morris, full control and possession of said farm during each of our lives. And if my said wife shall not elect to accept the terms of this will at my death, I devise her a life estate in said land anyhow, and at her death two-thirds of the land in fee shall be, and the same is, hereby devised to my said brother * * *."

On the 18th day of May, 1886, said widow filed in the

office of the clerk of the circuit court a written statement in the following words:

"This is to certify that I, the undersigned surviving widow of the late Thomas Morris, deceased, hereby make my election to take my portion of the property of my said husband, deceased, under the statute, in lieu of the portion as devised to me by the last will and testament of my said husband.                     Her

"HANNAH + MORRIS.

"Witness:                         Mark.
  "JAMES A. LARING."

It will be observed that the statement of election was not acknowledged, as required by law.   Elliott's Supp., section 428; R. S. 1894, section 2666.

Further agreed facts are that on the 20th day of May, 1886, said Hannah Morris filed in the Washington Circuit Court, a complaint to contest said will, making said Micah Morris a defendant, and on the 5th day of June, 1886, she filed an additional paragraph of complaint in contest of said will, in which she set out a copy of said statement of election.

It is expressly agreed that said filing "was the only filing of said alleged widow's election that ever occurred, to wit, as an exhibit with a paragraph of her complaint contesting her husband's will."

It will also be observed that there is apparent conflict in the agreed facts that said statement was filed on the 18th day of May, 1886, and that the only filing was on the 5th day of June, 1886, when filed as an exhibit with a paragraph of complaint contesting the will.   The conflict in dates is unimportant, but the essential fact is as to the manner of filing, and of that fact there is no conflict, but it is conclusive that it was "as an exhibit with a paragraph of her complaint."

It appears that upon said complaint in contest, issues

were formed, a trial was had, and a finding and judgment sustaining said will, from which judgment said widow appealed to this court, wherein the judgment so sustaining said will. was affirmed.

None of the pleadings in said proceeding to contest said will are before us in this record.

The widow, Hannah Morris, departed this life, intestate, on the 19th day of December, 1888, leaving no others to inherit from her than the appellants and the appellee, Charles Albertson.   The interests of the parties are agreed upon in the event it is found that said Hannah held a fee-simple interest in the lands of her deceased husband.

The circuit court found for the appellee Micah Morris, thereby holding that the said Hannah Morris, upon her death, possessed but a life estate in any part of the lands of which Thomas Morris died seized.

If, under the facts stated, the widow did not elect to take under the law, and to renounce the will, in substantial compliance with the statute governing such elections, her interest in said land is to be measured by the terms of the will.

The appellants' learned counsel first contend that by the decision in the action to contest the will there was such an adjudication of the efficacy of the statement here asserted as an election, and to constitute a valid renunciation of the will, as to not only create a rule of property, but to preclude the appellee Morris to question the sufficiency of such statement.

It is true, as held in *Schori* v. *Stephens*, 62 Ind. 441, that an adjudication establishing a construction of an instrument, upon the faith of which investments are made, should be regarded as a rule of property, and should preclude those for or against whom such decision is made, but the doctrine of that case has no appli-

cation upon the facts before us.  As we have said, the
pleadings in the case to contest the will are not in the
record, and while seriously doubting our privilege of go-
ing to the case of *Morris* v. *Morris,* 119 Ind. 341, to sup-
ply the pleadings, when we look into that case we do
not find that this court considered the question of the
sufficiency of the statement to constitute an election un-
der the statute.   If its sufficiency was there in question,
it is unfortunate for the appellants' position, for we learn
that the paragraph of complaint alleging an election was
held insufficient.

If, as appellants urge, it was there in issue because it
might have been put in issue, as held in the cases cited
from *Fischli* v. *Fischli,* 1 Blackf. 360, to *Wilson* v. *Buell,*
117 Ind. 315, then a decision there adverse to the an-
cestor of the appellants would, by the same authorities,
preclude the appellants.

In our opinion, the sufficiency of the election to com-
ply with the requirements of the statute was not in is-
sue in the former proceeding, even if we should adopt
the appellants' theory that we may look to the reported
case as supplying the record.

It is next urged that though not acknowledged, the
statement was in substantial compliance with the re-
quirements of the statute above cited.   In this conten-
tion counsel seem to have overlooked the infirmity of the
alleged election in not further complying with the stat-
ute in having the election "filed and recorded in the of-
fice of the clerk of the circuit court, in which such will
is probated and recorded, by such clerk, in the record of
wills, reference being made from such record to the book
and page in which the will is recorded," etc.   This may
have been overlooked because of the inconsistency of the
record upon which the subject of the filing, as above
mentioned, but we hold that the burden is upon the ap-

pellants to make manifest, by the record, the error of the trial court, and it is in the light of this rule that we have construed the record.

In passing upon the sufficiency of the election, we have, therefore, a mere statement of the widow, not acknowledged, not recorded and not filed, except as an exhibit with a pleading. There must be a substantial compliance with the statute. *Fosher* v. *Guilliams, Exr.*, 120 Ind. 172.

If a particular mode of election is specified, another mode, as a suit for dower in disregard of the will, will not suffice. *Shaw* v. *Shaw*, 2 Dana, 341.

"In all cases where there is a will, the widow is conclusively bound by it, unless she renounces its provisions and elects in the manner pointed out in the statute. *Fosher* v. *Guilliams, Exr., supra; Stephens* v. *Gibbes*, 14 Fla. 331; *Waterbury* v. *Netherland*, 6 Heisk. 512.

There having been no election to take under the law and to renounce the will, the measure of the widow's interest must be found in the will, and, consequently, the interests of the appellants must depend upon those of the widow, as found in the will.

It is finally contended that by the provisions of the will, observing the intention of the testator, the widow took one-third of the land in fee, or, adopting the ordinary meaning of the word *elect*, as employed by the testator, and in considering that the law, as it stood when the will was executed, required an affirmative election to take under the will, the failure of the widow to so elect was an indication of her choice, as the testator designed it, to take under the law, and that, therefore, she took under the law the one-third of said land in fee because of an intestacy, under the circumstances, as to one-third in fee, and she took a life estate in the whole by the express provisions of the will. Aside from the construc-

tion which should be given the word *elect*, we think it manifest that the testator's first intention was to provide for his widow during her natural life.    This desire is indicated in either of the contingencies foreseen.    A life estate in the whole was given her if she accepted his will, and he desired her to have a life estate in the whole if she did not take under the will.    It is also clear that his first desire, as to the fee in the whole tract, was that it should go to his brother, Micah Morris.

While recognizing her legal right to take one-third in fee under the law, it can not be said that it was his desire that she should do so.    He provided for that contingency by directing the fee in the two-thirds, if she did not take under the will.    If the intention of the testator were permitted to control the question, to the exclusion of the widow's legal rights and duties, a life estate in the whole tract would be her only provision. But, at the time of the execution of the will, the law gave to a widow the right to choose between the provision made for her by her husband's will and that made for her by law, as in cases where no will existed (R. S. 1881, section 2491), but she was expressly required to affirmatively elect which of the provisions she would accept.    R. S. 1881, section 2505.

It is manifest that the testator had in mind the election here contemplated, for it is only by the sense in which the word is here used that the widow was permitted to make a choice between the provisions made for her.    It was only in a technical sense that the privilege was given, and we have no doubt that the word *elect* was employed by the testator in that sense.

It is not apparent, from any possible construction of the language used, that the testator intended to provide the manner in which the widow might exercise that choice; and, if he did not, its manner was clearly with the

law as it existed when the choice was made.  We do not intimate that the testator could have changed the manner of expressing this choice if he had provided a manner of making it.

As we have seen, when the time came for making the choice, it was the law of this State that if she desired to take under the will no affirmative election was necessary, and therein less was required of her than by the former law, but, if she chose to take under the law, it was necessary that she make that election in writing acknowledged, filed, and recorded, within a specified time, which we have held she did not do, and as a result she was bound by the provisions of the will.  In this conclusion she held a life estate in the whole tract, and the fee simple was in Micah Morris.  Therefore, upon her death nothing remained upon which to predicate an inheritance by the appellants.

The judgment of the circuit court denying partition is affirmed.

