**The ESTATE OF Dorothy GERKE, Deceased, Appellant–Respondent,**

v.

**In re the ESTATE OF Elmer GERKE, Deceased, and Lisa P. Gerke, Appellees–Petitioners.**

**No. 01A02–9010–CV–598.**

Court of Appeals of Indiana, Second District.

Nov. 12, 1991.

Harry W. Scott, M. Bruce Scott, Decatur, for appellant-respondent.

Susan E.S. Zurcher, Schurger, Schurger, Zurcher & Harvey, Decatur, for appellees-petitioners.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-respondent Estate of Dorothy Gerke (Dorothy's Estate) appeals the invalidation of Dorothy's election to take against the will (hereinafter the "Election") of her late husband, Elmer Gerke (Elmer), claiming the trial court erred in determining the Election was invalid because it was not acknowledged and that the challenge to the validity of the Election was barred by laches.

We affirm.

## FACTS

The facts which support the judgment show that Elmer died on January 21, 1989 without issue, leaving Dorothy his surviving spouse. On February 9, 1989, Dorothy produced for probate Elmer's will in which Elmer purported to leave Dorothy a life estate in "all the rest, residue and remainder of [his] property," *record* at 15A, which was valued at approximately $300,000. At Dorothy's death, Elmer's will provided that "fifty percent share of [his and Dorothy's] property" would go to nephew, Robert Melcher (Melcher), and his nieces, Marjorie Scheumann Glick (Glick) and Lisa P. Gerke (Lisa). *Record* at 15A. On the same day Dorothy produced the will, she also filed an election to take against the will, in which she declared:

> "Comes now Dorothy A. Gerke, surviving wife of Elmer Gerke, deceased of the County of Adams, and State of Indiana, and states that she does hereby elect to take her legal intestate share in the estate of the late Elmer Gerke, and does hereby renounce any and all provisions in the Last Will and Testament of said Elmer Gerke inconsistent herewith, pursuant to the provisions of the Indiana Code, I.C. 29–1–3–3.
> s/Dorothy Gerke
> DOROTHY A. GERKE,
> Surviving wife of Elmer Gerke"

*Record* at 17.

On February 10, 1989, Lisa petitioned the court for supervised administration of Elmer's Estate, which request was granted that same day. On April 28, 1989, Lisa notified the court that there was a disagreement over the interpretation of Elmer's will and asked that estate assets not be distributed until the court made a final determination of heirship. The court granted the request and ordered that no partial or complete distribution be made without first providing notice to interested parties and holding a hearing on the distribution.

On November 22, 1989, Patricia Densel, Dorothy's daughter and the administrator of Elmer's Estate, filed a Schedule to Determine Inheritance Tax in which she named Dorothy as the sole beneficiary of Elmer's estate. On February 2, 1990, Lisa objected to the Schedule, and requested that it be amended to also show her, Glick, and Melcher as beneficiaries of Elmer's Estate. Glick and Melcher, however, had sold their interests in the estate to Dorothy on January 24, 1990. Shortly thereafter, Dorothy died.

On April 17, 1990, Lisa moved the court to set aside Dorothy's Election on the grounds that it was not acknowledged as required by law. Marvin Crell, the attorney for Elmer's Estate, on July 6, 1990, filed a Certificate of Acknowledgment to Dorothy's Election and an affidavit, averring that Dorothy had acknowledged her signature on the Election in his presence on February 8, 1989, but that he had inadvertently failed to attach a certificate attesting to the acknowledgement when he filed the Election.

Following a hearing on Lisa's motion held on July 9, 1990, the court ruled that the Election was invalid for lack of an acknowledgment and ordered it set aside.

### ISSUES

On appeal, Dorothy's Estate raises two issues, which we restate as:

1. Did the trial court err in concluding that Dorothy did not acknowledge the Election as required by Ind.Code 29–1–3–3(a) (1988)?

2. Is Lisa's objection to the Election barred by laches?

### DECISION

*ISSUE ONE*—Did the trial court err in holding that Dorothy did not acknowledge the Election as required by IC 29–1–3–3(a)?

*PARTIES' CONTENTIONS*—Dorothy's Estate argues that Dorothy did acknowledge her signature at the time of the execution of the Election and claims that IC 29–1–3–3(a) does not require the filing of a certificate of the acknowledgement. Lisa argues that the acknowledgment provision requires that a certificate of acknowledgment in writing be included as part of the election.

*CONCLUSION*—The trial court did not err in determining that the acknowledgement requirement had not been satisfied.

▮▮▮ The pertinent statute in this dispute is IC 29–1–3–3(a):

> "(a) The election to take the share hereinbefore provided shall be in writing, signed and *acknowledged* by the surviving spouse or by the guardian of his estate and shall be filed in the office of the clerk of the court...." (emphasis supplied).

This case raises the novel question in Indiana of what acts are necessary to satisfy the acknowledgement requirement of IC 29–1–3–3(a). So what does "acknowledged" mean? The legislature does not define that term for us. Black's Law Dictionary, however, does define it as the term relates to the execution of a legal instrument:

> "*Instruments.* Formal declaration before authorized official, by person who executed instrument, *that it is his free act and deed. The certificate of the officer on such instrument that it has been so acknowledged.*" (Emphasis supplied.)

Black's Law Dictionary 21 (5th Ed.1979) (emphasis supplied.)

This definition highlights the dispute in this case. Dorothy's Estate claims the requirement that the Election be "acknowledged" refers only to the declaration by the spouse that the execution of the Election was the spouse's free and voluntary act. Lisa, on the other hand, views the term as including not only the spouse's declaration, but also a certificate of acknowledgement in writing by the officer witnessing the declaration.

While no Indiana cases address this question, two jurisdictions, New York and North Carolina, have dealt with the issue extensively reaching opposite conclusions. The New York Court of Appeals [1] in *Rogers v. Pell* (1898), 154 N.Y. 518, 49 N.E. 75, considered the application of an assignment act which required that any assignment for the benefit of creditors be "duly acknowledged before an officer authorized to take the acknowledgement of deeds ...". Laws of New York (1877), c. 466, Section 2. Although the New York court recognized the statute had been amended to remove specific language requiring that the verbal declaration be evidenced by a certificate made a part of the assignment,[2] the court nonetheless rejected the argument that an oral acknowledgment, without the certificate was sufficient:

> "The position that, since the change in the statute, an oral acknowledgment without certification is sufficient, we regard as unsound, for the law knows no 'acknowledgment,' made before a magistrate or notary, unless it is certified. *The word, as commonly used by the legislature, the courts, and the bar, means both the act and the written evidence thereof made by the officer.* [Citations omitted.] *An instrument is not 'duly acknowledged' unless there is not only the oral acknowledgment, but the written certificate also ...*"

*Id.* at 528–29, 49 N.E. at 78 (emphasis supplied).

More recently, another New York appellate court considered a statute requiring that a release of an election to take against

a will be "acknowledged," and reached the same conclusion:

> "An acknowledgment encompasses *two* critical elements, namely the oral declaration of the signer of the document, and the written certificate of acknowledgment, endorsed by one of a number of authorized public officers, attesting to the oral declaration."

*Matter of Henken* (1989), 150 A.D.2d 447, 540 N.Y.S.2d 886, 887 (emphasis supplied); *See also Jackson v. Hudspeth* (1945), 208 Ark. 55, 184 S.W.2d 906.

North Carolina, however, has reached a different conclusion. In *Lawson v. Lawson* (1987), 321 N.C. 274, 362 S.E.2d 269, the North Carolina Supreme Court addressed a statute requiring that a separation agreement "be ... acknowledged by both parties before a certifying officer." N.C.G.S. Section 52–10(a) (1984). In that case, the notary failed to attach the certificate and notary seal to the agreement. Learning of the omission two years later, the notary affixed his seal to the agreement and added a certificate indicating that the parties had personally appeared before him some two years earlier and orally acknowledged the document in his presence. The court determined that the statutory requirement that the separation agreement be "acknowledged" referred only to the formal declaration by the person executing a document, and concluded that the requirements of the statute had been satisfied without the attachment of a certificate. *Id; See also Banks v. Shaw* (1947), 227 N.C. 172, 41 S.E.2d 281; *Freeman v. Morrison* (1938), 214 N.C. 240, 199 S.E. 12.

In determining which approach to adopt, we look to other parts of IC 29–1–3–3(a) for legislative intent. Of service in this search is a proposed form for executing an election to take against a will:

> "[The Election] may be in the following form:
>
> I, A.B., surviving wife (or husband) of C.D., late of the county of _____ and state of _____ do hereby elect to take

---

1. The New York Court of Appeals is the highest appellate court in New York.

2. The assignment act was formerly Laws of New York (1860), c. 348.

my legal share in the estate of the said C.D. and I do hereby renounce the provisions in the will of the said C.D. inconsistent herewith.

> Signed,
> (Signature)
> (Acknowledgement)"

IC 29–1–3–3(a).

The existence of this proposed form in the statute seems decisive. It certainly expresses the legislative intent that there be not only a verbal declaration that execution of the election was the spouse's free and voluntary act, but also that the declaration be evidenced by a writing included as part of the election so that the verbal act and the written act merge to produce the acknowledgment.

This interpretation appears consistent with the approach taken by our supreme court in *Miller v. Stephens* (1902), 158 Ind. 438, 63 N.E. 847 and *Draper v. Morris* (1894), 137 Ind. 169, 36 N.E. 714. In those cases, our supreme court decided that an electing spouse's failure to comply with the technical requirements of the statute invalidated the spouse's election resulting in the testator's wishes being carried out as if the election was never exercised. *Miller, supra; Draper, supra.* While not dispositive of the exact question presented by this case, *Miller* and *Draper* do reveal that when there is ambiguity over the exercise of a statutory right of election, the wishes of the testator are to prevail.

By interpreting the word "acknowledged" as requiring both the verbal declaration and the written certificate, it is assured that the testator's wishes will not be easily defeated. This duality of execution appears to be the protection contemplated by the legislature if the will is to be circumvented. *See Miller, supra; Draper, supra.*

As Dorothy did not satisfy the acknowledgment requirement of IC 29–1–3–3(a), her election was invalid.[3]

*ISSUE TWO*—Is Lisa's objection to the Election barred by laches?

*PARTIES' CONTENTIONS*—Dorothy's Estate argues that Lisa's over fourteen month delay in filing her objection to the Election was inexcusable, and that because the estate was prejudiced as a result, Lisa's objection should be barred by laches. Lisa responds that the delay in filing the objection was excusable and that, nonetheless, Dorothy's Estate has failed to demonstrate prejudice or injury as a result of the late filing of the objection.

*CONCLUSION*—The trial court did not abuse its discretion in entertaining Lisa's objections to the Election.[4]

The ancient equitable doctrine of laches is said to consist of three elements: 1) an inexcusable delay in asserting a right; 2) an implied waiver from a knowing acquiescence in existing conditions; and 3) circumstances resulting in prejudice to the adverse party. *Haas v. Holder* (1941), 218 Ind. 263, 32 N.E.2d 590; *Simon v. City of Auburn, Ind., Bd of Zoning Appeals* (1988), Ind.App., 519 N.E.2d 205; *Alber v. Standard Heating and Air Conditioning, Inc.* (1985), Ind.App., 476 N.E.2d 507. A trial court has considerable latitude in deciding whether to invoke laches, and its decision will not be reversed on appeal absent an abuse of that discretion. *Ball v. Ind. Dep't of Revenue* (1990), Ind., 563 N.E.2d 522; *Haas, supra; Irmscher v. McCue* (1987), Ind.App., 504 N.E.2d 1034.

In this case, Lisa was represented by counsel who received a copy of the Election on or about February 10, 1989. *Record* at 136. From that time on Lisa was, through her attorney, actively involved in matters regarding the estate, requesting further

---

3. Dorothy's Estate does *not* claim there was a dispute over the interpretation of Elmer's will which resulted in an extension of time to file an Election as provided by IC 29–1–3–2, and because of that extension of time, Crell's execution of the certificate of acknowledgment completed Dorothy's Election within the statutory time period. The failure to raise and brief this question on appeal results in the issue being waived.

*National By-Products, Inc. v. Ladd* (1990), Ind. App., 555 N.E.2d 518; Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

4. Although the parties argued the doctrine of laches at the hearing, the court's order does not expressly indicate its ruling regarding the applicability of the doctrine to this case.

information about estate matters, challenging the interpretation of the will, asking that no distribution be made, and objecting to other action taken by the executor. *Record* at 37–8, 42, 64. Nonetheless, it wasn't until April 27, 1990, more than fourteen months after the Election was filed, that Lisa objected to it because it was not properly acknowledged. *Record* at 67–8.

In this regard we can find no direct evidence or inference indicating Lisa or her attorney knew the Election was invalid for lack of an acknowledgement during this period of time. The evidence shows only that Lisa knew the Election had been filed. To satisfy the knowing acquiescence element of laches, Dorothy's Estate must also show that Lisa knew the Election was not properly acknowledged and that she could have objected to the Election on that basis, i.e. that she knew she had a legal right that she failed to exercise. *See Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820.

Knowledge of these legal rights with regard to the laches doctrine cannot be predicated on *constructive* knowledge, but must be based on *actual* knowledge of one's legal rights. *Fields v. Evans* (1985), Ind. App., 484 N.E.2d 36; *Miladin v. Istrate* (1954), 125 Ind.App. 46, 119 N.E.2d 12; *but cf. Hutter v. Weiss* (1961), 132 Ind.App. 244, 177 N.E.2d 339. In reaching this conclusion in *Miladin, supra,* this court said:

> "It seems to us that discovery means something more than the knowledge with which the law charges one but which he does not actually have. Laches connotes a conscious indifference or procrastination which is wholly absent in one whose knowledge is constructive only."

*Id.* at 56, 119 N.E.2d at 18.

In the absence of evidence that Lisa had knowledge that the Election was legally invalid, it was not unreasonable for the trial court to conclude that she did not acquiesce in the faulty election, and so did not waive her right to later raise the ques-

tion, i.e. laches would not apply as no "knowing acquiescence." *See Fields, supra; Miladin, supra.*

Further the trial court may have concluded that the prejudice component of the laches doctrine had not been met. This component is not measured by a "but for" test, i.e. but for the trial court's failure to apply the doctrine of laches to bar Lisa's objection, the election would have not been declared invalid. Rather the prejudice element requires that Dorothy's Estate have materially altered its position due to Lisa's delay in objecting to the Election. *See Grantham Realty Corp. v. Bowers* (1939), 215 Ind. 672, 22 N.E.2d 832; *Ryason v. Dunten* (1905), 164 Ind. 85, 73 N.E. 74. The party seeking the application of laches to bar a claim must have been prejudiced by a "change in condition" due to the delay. *See* 30A C.J.S. *Equity* § 112 (1965).

Dorothy's Estate introduced no evidence showing how it changed its position as a result of Lisa's delay in objecting to the Election. Rather at the time Lisa filed the objection, no funds had been distributed from Elmer's Estate and Dorothy's Estate was in same position after Lisa filed her objection as it was when the Election was filed. Having not materially altered its position due to the delay in filing the objection, Dorothy's Estate has failed to demonstrate sufficient prejudice to invoke the doctrine of laches. *See Grantham, supra; Ryason, supra.*

So it would appear that at least two of the three elements of the ancient equitable doctrine of laches are absent.

Judgment affirmed.

SHIELDS and SHARPNACK, JJ., concur.