

FILED

Sep 20 2017, 5:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Karl L. Mulvaney
Gregory J. Duncan
Nana Quay-Smith
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

Gerald H. McGlone
McGlone Law
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Mark D. Hassler
Jacob H. Miller
Hunt, Hassler, Kondras & Miller LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Revocable Trust Agreement created by the Settlor, Anil Kumar Sarkar

Dipa Sarkar,

*Appellant-Petitioner,*

v.

Anuradha ("Mili") Sarkar Naugle,

*Appellee-Respondent*

September 20, 2017

Court of Appeals Case No. 84A01-1701-TR-67

Appeal from the Vigo Superior Court

The Honorable David R. Bolk, Judge

Trial Court Cause No. 84D03-1503-TR-1438

**Crone, Judge.**

# Case Summary

[1] Eighty-six-year-old Dipa Sarkar, the surviving spouse of Anil Kumar Sarkar, appeals the trial court's entry of summary judgment in favor of Anuradha Sarkar Naugle ("Mili") as successor trustee of the Anil Kumar Sarkar Revocable Trust Agreement dated August 23, 1993 ("the Trust"). In short, at the time of Anil's death, his probate estate had minimal assets because the lion's share of his assets, totaling close to $2,000,000, had been placed in or diverted to the Trust. However, the Trust provided for Dipa, Anil's wife of fifty-six years, to receive only $50,000 or roughly 2.5% of his total assets. Similarly, Anil's will ("the Will") made little provision for Dipa, bequeathing her only his clothes and tangible personal property while providing that the remaining assets, if any, be transferred to the Trust.

[2] Dipa filed a petition to docket the Trust, which made numerous allegations regarding the validity of the Trust as well as questions regarding the propriety of certain assets being diverted to the Trust (rather than to Dipa personally or to the probate estate) in an attempt to disinherit Dipa. Thereafter, while that proceeding was pending, Dipa filed an election to take against the Will. Mili subsequently moved for summary judgment on Dipa's petition to docket the Trust, but she did not address Dipa's election to take against the Will. Dipa then filed a motion for leave to file a second amended petition to docket the Trust, bringing her election to take against the Will to the trial court's attention, and alleging more specifically her claims regarding the validity of the Trust. The trial court denied Dipa's motion to amend, simply concluding that it would

be prejudicial to Mili to allow Dipa to amend her petition. The trial court made no statement as to the timeliness of Dipa's election. Thereafter, the trial court entered summary judgment in favor of Mili on the narrow issue of whether the Trust was the proper beneficiary of a certain asset, and further declaring that such order disposed of all outstanding issues between the parties. The trial court failed to address Dipa's election to take against the Will or the timeliness thereof.

[3] On appeal, Dipa asserts that her election to take against the Will was timely, and because it is a statutory right of a surviving spouse, the trial court erred as a matter of law in failing to honor the election. We agree and conclude that: (1) Dipa made a timely election to take against the Will; (2) the trial court abused its discretion in denying Dipa's motion to amend her petition to docket the Trust; and (3) genuine issues of material fact remain, precluding summary judgment. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History[1]

[4] Anil and Dipa Sarkar were married in 1958, and remained married for fifty-six years until Anil's death on February 24, 2015. They had one child, a daughter named Rumu. Anil had two children from a brief previous marriage, daughter

---

[1] Dipa's statement of facts section of her brief is overly cumbersome and contains numerous facts that are meant to inflame our passions but are irrelevant to the issues on appeal. We remind Dipa's counsel that the statements of facts section is to be limited to "the facts *relevant* to the issues presented." Ind. Appellate Rule 46(A)(6) (emphasis added).

Mili, and son Ashoke. During their marriage, Anil and Dipa, who were both medical doctors, operated a private pathology practice in Terre Haute called Sarkar Medical Corporation.

[5] In 1993, Anil created the Trust, which was restated in its entirety on March 31, 1997. The stated purpose of the Trust was "a simplified means of accomplishing both lifetime and death transfers" of Anil's assets. Appellant's App. Vol. 2 at 27. Anil amended the Trust seven times, with the seventh and final trust amendment occurring on March 14, 2014. From the original form through to the fourth amendment, Anil made no provision for distribution of any Trust assets to Dipa, stating "[b]ecause my spouse, [Dipa], has more assets than I have and will not need my money or property to support herself, I choose to leave nothing to her." *Id.* at 35. Beginning with the fifth amendment through the final amendment, Anil provided for Dipa to receive $50,000. Specifically, in the final amendment, he named Mili as successor trustee and directed her to distribute $250,000 to Rumu, $30,000 to Ashoke, $50,000 to his brother Sekhar, and $50,000 to Dipa if she survived him by thirty days. The remainder of the Trust assets were to be distributed to Mili, or if she was then deceased, to her descendants per stirpes. *Id.* at 46.

[6] The Trust was funded by two investment accounts owned by Anil. One account, titled in the name of the Trust and held by Anil as trustee, consisted of stocks and bonds and was valued at $924,635 at the time of Anil's death ("the Morgan Stanley Trust Account"). During his later years, Anil had his monthly social security payments diverted into the Morgan Stanley Trust Account. The

second account that funded the Trust was an Individual Retirement Account valued at $1,007,614 ("the IRA"). In December of 2003, Anil designated the Trust as the sole beneficiary of the IRA.

[7] On January 20, 2014, Anil executed the Will. In the Will, Anil appointed Rumu as personal representative and directed that his body be disposed of without ceremony of any kind. He directed that his probate estate should be used to pay all his debts, medical expenses, funeral expenses, estate administration expenses, and "all inheritance, estate, and like taxes … payable by reason of [his] death and in connection with any property, whether passing under [the Will] or otherwise" without reimbursement from any person. *Id*. at 66. Anil made no provision for Dipa or his children in the Will other than stating that his clothing and tangible personal property would go to Dipa, if she survived him by thirty days; otherwise, the property would be transferred to the Trust. The Will provided that anything left in his net residuary estate would be transferred to the Trust.

[8] Shortly after Anil's death, on March 10, 2015, Rumu filed a petition to probate the Will. The Will was admitted to probate and Rumu was appointed as personal representative the following day. Also on March 10, Dipa filed a "Petition to Docket Trust and for Relief." *Id*. at 18. Dipa averred that: (1) the Will had been admitted to probate and provided that Anil's residuary estate be distributed to the Trust; (2) at the time of Anil's death, the couple had been married for fifty-six years; (3) on the date of Anil's death, nearly all of his assets were owned by the Trust; (4) the Trust was created in 1993, restated in 1997,

and amended seven times; (5) one of the Trust assets consists of an IRA and because Dipa signed spousal consent regarding the beneficiary of the IRA under duress, the IRA should be removed from the Trust; (6) prior to his death, Anil diverted his social security payments to the Trust, which has left the probate estate with no assets.[2] Based upon these facts, Dipa requested for the Trust to be docketed by the probate court and for her petition to be heard. She further requested the court to freeze the assets of the Trust and to remove the IRA from the Trust. The trial court set a hearing on Dipa's petition for April 24, 2015.

[9] On March 20, 2015, Dipa filed a motion to remove Mili as trustee or require her to post a bond to ensure that she performed her duty to pay the estate's unpaid claims and expenses. Dipa asserted that Anil's probate estate was insolvent, and that the Trust was liable to pay the estate's unpaid claims including funeral expenses, costs of administration, and Dipa's surviving spouses's allowance. Mili responded with a request for continuance of the April 24 hearing date. Following a telephonic hearing on April 21, 2015, the trial court entered an order docketing the Trust and continuing the April 24 evidentiary hearing. The court ordered that the IRA assets be frozen and not distributed to the Trust, and that a pretrial conference (rather than an evidentiary hearing) be held on April 24 to clarify the issues. The trial court's order did not address Dipa's request to freeze the other assets of the Trust.

---

[2] The record indicates that Dipa corrected a slight error and filed her first amended petition to docket the Trust on March 13, 2015. The first amended petition contains the same averments as the original.

[10] On April 24, 2015, Dipa again filed a motion requesting that, in addition to the IRA, the Trust assets be frozen until the time for filing claims against Anil's estate had expired. Dipa sought to ensure that the Trust retained sufficient assets to pay the estate's pending claims, costs of administration, and surviving spouse's allowance. On that same date, the trial court held an unrecorded pretrial conference. Regarding Dipa's motion to freeze the Trust assets, counsel for both parties agreed to a distribution of 85% of the non-IRA Trust assets to the Trust's beneficiaries. The remaining funds were not to be distributed "until such time as the Court determines which, if any, allowable claims and expenses of [the estate] shall be paid out of the Trust's assets pursuant to applicable Indiana law." *Id*. at 119. Dipa received $42,500 from the Trust.

[11] On May 29, 2015, Dipa filed a petition to collect her surviving spouse's statutory allowance from Anil's probate estate pursuant to Indiana Code Section 29-1-4-1. Dipa alleged that the value of the estate was zero and thus the transferees of Anil's nonprobate property (the Trust and its beneficiaries) were responsible to pay her claim. Mili, as trustee, objected to Dipa's petition. The parties disagreed on numerous issues, including who should pay Anil's funeral expenses and whether the Trust would be entitled to a setoff against Dipa's spousal allowance for Dipa's distribution as a beneficiary under the Trust.

[12] On June 16, 2015, Rumu's counsel filed a report advising the trial court that he had received a check for $64,569.58 from Terre Haute Savings Bank. He reported that this amount was the balance of two bank accounts Anil held at the bank. Counsel stated that he had known about the accounts but mistakenly

believed that they were Trust assets rather than estate assets, thus causing him to believe that the estate was insolvent. Because the estate was not insolvent, on that same date, Dipa filed her election to take against the Will pursuant to Indiana Code Section 29-1-3-1.

[13] Three months later, Mili filed a motion for summary judgment on Dipa's petition to docket the Trust. Mili's motion addressed only whether Dipa's consent was necessary to effectuate Anil's designation of the Trust as beneficiary of his IRA. Mili argued that there was no genuine issue of material fact that Dipa's consent was not required, and therefore Dipa's claim that she signed the consent under duress was irrelevant. Mili's summary judgment motion did not address Dipa's prior-filed election to take against the Will.

[14] Thereafter, Dipa's counsel filed a motion to withdraw and new counsel entered an appearance on October 1, 2015. Dipa's new counsel moved for, and was granted, continuances regarding the trial date, discovery cutoff, and the time for response to Mili's summary judgment motion. On December 18, 2015, Dipa filed a motion for leave to file a second amended petition[3] to docket the Trust pursuant to Indiana Trial Rule 15(A). The second amended petition brought Dipa's prior-filed election to take against the Will to the trial court's attention, and also alleged more specifically her claim regarding the validity of the Trust and her request that the Trust assets be included in the probate estate for the

[3] *See supra* footnote 1.

purpose of calculating her elective share. Dipa's motion to amend noted that no prejudice would result to either party from the granting of the petition.

[15] Mili objected to the proposed amendment, arguing that it was futile because Dipa's election against the Will was untimely pursuant to Indiana Code Section 29-1-3-2(a), in that it was filed more than three months after the date of the order admitting the Will to probate. Dipa responded by arguing that her proposed amendment was not futile as her election was timely pursuant to Indiana Code Section 29-1-3-2(b), because at the time the election was filed, litigation was pending to determine a matter of law or fact which would affect the amount of Dipa's elective share.

[16] On July 13, 2016, the trial court entered its order denying Dipa's motion to amend, and instructing Dipa to respond to Mili's summary judgment motion regarding the narrow issue of the validity of the IRA beneficiary designation. In its order, the trial court mentioned Dipa's election to take against the Will, but made no finding regarding the timeliness or untimeliness thereof. Instead, the trial court determined that allowing Dipa to "now assert[] a claim for spousal rights pursuant to IC § 29-1-3-1 … is unduly prejudicial …." *Id.* at 17. Dipa filed a motion to reconsider which was also subsequently denied by the trial court. After her request to certify the order for interlocutory appeal was denied by the trial court, Dipa responded to Mili's motion for summary

judgment, focusing on her election to take against the Will and claiming a right to recover her elective share from the Trust assets.[4]

[17] On December 16, 2016, the trial court entered summary judgment in favor of Mili concluding that the Trust was the proper beneficiary of the IRA. The trial court did not address Dipa's election to take against the Will. The court declared that its entry of summary judgment resolved "all outstanding issues" between the parties, and to the extent any unresolved "minor issues" remained, there was no just reason for delay and the court's order constituted a final judgment. *Id*. at 14.

[18] On January 9, 2017, Dipa filed a renewed election to take against the Will stating that a final judgment on all pending litigation was entered on December 16, 2015, and that her renewed election was filed within thirty days of that judgment pursuant to Indiana Code Section 29-1-3-2(b). Mili filed a motion to strike the renewed election claiming it was untimely. The trial court granted Mili's motion, concluding that the renewed election was "redundant and of no effect." Appellant's App. Vol. 6 at 31. This appeal ensued.

## Discussion and Decision

[19] Dipa appeals the trial court's entry of summary judgment.

---

[4] Dipa filed a cross-motion for summary judgment on October 14, 2016. However, the trial court subsequently struck Dipa's motion as untimely and she does not challenge that conclusion on appeal.

We review such rulings de novo. Pursuant to Indiana Trial Rule 56(C), a summary judgment movant must make a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. If the movant satisfies this burden, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. A "genuine issue" is one upon which the parties proffer differing accounts of the truth, or as to which conflicting inferences may be drawn from the parties' consistent accounts; a "material fact" is one that affects the outcome of the case. We must construe all evidence and resolve all doubts in favor of the non-moving party, so as to avoid improperly denying that party's day in court. Summary judgment is not a summary trial, and it is inappropriate merely because the nonmoving party appears unlikely to prevail at trial. The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred.

*Morris v. Crain*, 71 N.E.3d 871, 879 (Ind. Ct. App. 2017) (quoting *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.2d 539, 546 (Ind. Ct. App. 2015) (citations and some quotation marks omitted), *trans denied* (2016)). In addition, upon appellate review of summary judgment, questions of statutory interpretation are questions of law, which are reviewed on a de novo basis by appellate courts. *Moryl v. Ransone*, 4 N.E.3d 1133, 1137 (Ind. 2014).

## Section 1 – Dipa made a timely election against the Will.

[20] In entering summary judgment in favor of Mili, the trial court ruled on the narrow issue of whether the Trust, rather than Dipa personally, was the proper beneficiary of the IRA. We do not disagree with the trial court's determination of that narrow question, and we affirm partial summary judgment on that

issue.[5]  However, the trial court failed to acknowledge or address Dipa's invocation of her right to take her elective share of Anil's estate, and the effect that election has, or might have, on the assets of the Trust.  Dipa asserts that the trial court erred as a matter of law in claiming to have resolved "all outstanding issues" between the parties, but failing to honor her election.  Appellant's App. Vol 2 at 14.  Mili responds that the trial court properly did so because Dipa's election to take against the Will was not timely filed and therefore was invalid.

[21]  It is well established that in Indiana, surviving spouses hold certain statutory rights upon the death of their spouse.  *Boetsma v. Boetsma*, 768 N.E.2d 1016, 1020 (Ind. Ct. App. 2002), *trans. denied*.  Our statutory law protects a spouse from being disinherited by providing a spousal allowance from their deceased spouse's estate and the ability of the surviving spouse to take against the provisions of the deceased spouse's will, thus ensuring a certain degree of future support.  *Brown v. Guardianship of Brown*, 775 N.E.2d 1164, 1167 (Ind. Ct. App. 2002) (citing Ind. Code §§ 29-1-4-1 and 29-1-3-1).  An election to take against a will is best described as a "right to take a statutory share of the deceased spouse's real and personal property." *Dunnewind v. Cook*, 697 N.E.2d 485, 488 (Ind. Ct. App. 1998), *trans. denied*.  Indeed, Indiana Code Section 29-1-3-1(a) provides in pertinent part:

> When a married individual dies testate as to any part of the
> individual's estate, the surviving spouse is entitled to take against

---

[5] Dipa does not directly challenge the trial court's determination of this narrow issue.

the will under the limitations and conditions stated in this chapter. The surviving spouse, upon electing to take against the will, is entitled to one-half (½) of the net personal and real estate of the testator. ….

In determining the net estate of a deceased spouse for the purpose of computing the amount due the surviving spouse electing to take against the will, the court shall consider only such property as would have passed under the laws of descent and distribution.

An election to take the statutory share shall be in writing, signed and acknowledged by the surviving spouse, and shall be filed in the office of the clerk of the court. Ind. Code § 29-1-3-3(a).[6] Regarding the time limitation for filing such election, our legislature has fixed the time in which a surviving spouse may elect to take against a will as follows:

(a) Except as provided in subsection (b), the election by a surviving spouse to take the share hereinbefore provided must be made not later than three (3) months after the date of the order admitting to probate the will against which the election is made.

(b) If, at the expiration of such period for making the election, litigation is pending to test the validity or determine the effect or construction of the will or to determine the existence of issue surviving the deceased, *or to determine any other matter of law or fact which would affect the amount of the share to be received by the surviving spouse,* the right of such surviving spouse to make an election

---

[6] Mili challenges only the timeliness of Dipa's election. She makes no claim that the form or substance of Dipa's election was somehow improper. *See* Ind. Code § 29-1-3-3(a) (providing form of election to take against will, including required acknowledgment, and directing clerk how to record same).

shall not be barred until the expiration of thirty (30) days after the final determination of the litigation.

Ind. Code § 29-1-3-2 (emphasis added). This section extended the time permitted under the previous probate code in order "to give the surviving spouse an opportunity to determine the value of the estate before exercising his [or her] right of election." *See id*. (Indiana Probate Code Study Commission 1953 cmts. § 302).[7]

[22] The parties here agree that Dipa's election to take against the Will, initially filed on June 16, 2015, was filed five days after the expiration of the three-month election period pursuant to Indiana Code Section 29-1-3-2(a). They disagree, however, as to whether the election was timely filed pursuant to what may properly be characterized as the saving provision in Indiana Code 29-1-3-2(b). Under the facts presented, we think there is no question that Dipa's invocation of her statutory right was timely pursuant to subsection (b). This is because, as of June 11, 2015, there was litigation pending to determine matters of law or fact which would affect the amount of the share of Anil's estate to be received by Dipa.

---

[7] Our supreme court has noted that in 1953, based upon the work of the Indiana Probate Code Study Commission and guided by the American Bar Association's Model Probate Code, our General Assembly enacted "our state's modern Probate Code, 'the first major modification of Indiana law relating to the administration of decedents' estates in more than half a century.'" *Markey v. Estate of Markey*, 38 N.E.3d 1003, 1007 (Ind. 2015) (quoting *Possession and Control of Estate Property During Administration: Indiana Probate Code Section 1301*, 29 Ind. L. J. 251, 252 (1954)).

[23]    Specifically, despite having entered into an agreed order disposing of some issues raised by Dipa's original petition to docket the Trust, the parties were still embroiled in litigation disputing the Trust's obligations to pay Anil's funeral expenses as well as Dipa's $25,000 surviving spouse's allowance under the Will. Questions remained as to whether Anil's tangible personal property that was left to Dipa as part of the probate estate, and the value of which was unclear, would be used to satisfy the estate's expenses in the event it was determined that the Trust was not so obligated. Indeed, not only did the parties dispute the Trust's obligations to the estate, but Mili also challenged the estate's responsibility in the first place to pay some of the expenses based upon an alleged breach of fiduciary duty by Rumu as personal representative. Moreover, in addition to the IRA, a portion of the Trust's non-IRA assets remained frozen at Dipa's request, with the ultimate fate of those assets unknown as of June 11, 2015. These disputes undeniably could and would affect the value of the net probate estate and the amount of the elective share to be received by Dipa.

[24]    Mili asserts that none of the matters subject to the Trust litigation would have affected Dipa's elective share as contemplated by subsection (b) because, as of June 11, 2015, the parties believed that the probate estate was essentially insolvent. We disagree. First, as stated above, the final value of the net probate estate had yet to be determined due to the outstanding issues that involved, at least to some extent, the ample assets of the Trust. Second, despite the parties' belief, the probate estate was, in fact, not insolvent, as the later discovered funds

in two bank accounts titled in Anil's name alone became part of the probate estate on the date of Anil's death. *See* Ind. Code § 29-1-1-3(a)(24) (defining "Probate estate" as property transferred at death of decedent under decedent's will or under Indiana Code Section 29-1-2). Thus, any unresolved litigation regarding the obligations and expenses of a solvent estate would affect the amount of the surviving spouse's elective share.

[25] Pursuant to the applicable statutory language, Dipa's right to invoke her statutory election was not barred until the expiration of thirty days after the final determination of the Trust litigation, which did not occur until the trial court entered summary judgment on December 16, 2016.[8] Accordingly, Dipa's election to take against the Will made on June 16, 2015, was timely filed. Because Dipa timely invoked her statutory right to elect against the Will, the trial court erred when it entered summary judgment ignoring the election.[9]

---

[8] Having concluded that the election was timely filed based upon the pending litigation regarding Dipa's original petition to docket the Trust, we need not address Dipa's assertion that her second amended petition, (discussed in Section 2, *infra*) related back in time to the original petition pursuant to Indiana Trial Rule 15(C), thus also satisfying the pending litigation requirement of Indiana Code 29-1-3-2(b).

[9] Although Mili focuses on the timeliness of Dipa's election, she also implies that Dipa perhaps waived or at least should be precluded from pursuing her statutory right of election due to her original attorney's "characterization" of her claims against the Trust during prior proceedings before the trial court as well as Dipa's May 6, 2016, agreement to allow disbursement of a large portion of the Trust assets. Appellee's Br. at 24-25. However, Indiana Code Section 29-1-3-6 governs a surviving spouse's waiver of the right to take against a will and provides in pertinent part:

> The right of election of a surviving spouse ... may be waived before or after marriage by a written contract, agreement or waiver, signed by the party waiving the right of election, after full disclosure of the nature and extent of such right ....

## Section 2 – The trial court abused its discretion in denying Dipa's motion to amend her petition to docket the Trust.

Having determined that Dipa made a timely election to take against the Will, we turn to the related matter of the trial court's denial of Dipa's motion to amend her petition to docket the Trust to more specifically allege her claim against the Trust assets to satisfy her elective share. Indiana Trial Rule 15(A) governs the amendment of pleadings, providing in relevant part:

> **(A) Amendments.** A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty [30] days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires.

It is well settled that although the trial court retains broad discretion in granting or denying amendments to pleadings, amendments should be liberally allowed, while giving proper regard for any prejudice to the nonmoving party. *Hilliard v. Jacobs*, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), *trans. denied*. We will reverse only upon a showing of an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of

---

Mili makes no claim that Dipa signed any agreement waiving her right of election after full disclosure of the nature and extent of such right. A waiver not complying with statutory requirements may not be enforced by the court. *Bohnke v. Estate of Bohnke*, 454 N.E.2d 446, 449 (Ind. Ct. App. 1983). Moreover, the fact that a large portion of the Trust assets had already been distributed by agreement of the parties, although not ideal, did not divest Dipa of the right to invoke her statutory election.

the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

[28] Dipa's original petition to docket the Trust made numerous allegations that, in accordance with our standards of notice pleading, put Mili on notice that the validity of the Trust and Anil's attempt to essentially disinherit her was at issue.[10] As stated above, while that litigation was still pending, Dipa timely filed her election to take against the Will. The record indicates that three months after Dipa filed her election, Mili moved for summary judgment on Dipa's petition to docket the Trust but did not address Dipa's prior-filed election in her summary judgment motion. Thereafter, Dipa filed her motion for leave to file a second amended petition to docket the Trust to bring her election to the trial court's attention, and to more specifically allege a claim against the Trust assets. In denying Dipa's motion for leave to file her second amended petition, the trial court reasoned,

> The Court believes that permitting [Dipa] to now amend the relief sought; to wit: to assert a claim for spousal rights pursuant to I.C. 29-1-3-1 against the Trust assets in addition to the attempt to set aside the transfer of the IRA, is unduly prejudicial and contrary to the interests of justice after extensive discovery has

---

[10] Indiana's notice pleading rules do not require a pleading to adopt a specific legal theory of recovery to be adhered to throughout the case or require the complaint to state all elements of a cause of action. *Shields v. Taylor*, 976 N.E.2d 1237, 1244-45 (Ind. Ct. App. 2012). The notice pleading rules merely require that a pleading contain the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. *Id.* at 1245. "A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues." *Id.*

been conducted, the Summary Judgment deadline has passed and the original trial date vacated.

Appellant's App. Vol. 2 at 17.

[29] As this reasoning makes clear, the trial court denied Dipa's motion to amend because it believed that allowing Dipa to assert her statutory right to election would cause undue prejudice to Mili. While we do not agree that the amendment is unduly prejudicial, we find that in denying the motion to amend, the court conflated its discretion to deny a motion to amend with a surviving spouse's statutory right to timely elect to take against the will. Indeed, the trial court essentially placed a requirement upon Dipa that does not exist in the Probate Code, that is, to request trial court permission to assert her right of election. She need not do so.

[30] In other words, Dipa was not required to assert her right of election in a pleading or in an amendment thereto. Dipa had no obligation to include her election in her initial petition to docket the Trust or to amend her petition to include the election, as her election was independent of these pleadings. Once her election was timely filed in the form required by statute, as we conclude it was, her election was self-effectuating. *See Walker v. Lawson*, 526 N.E.2d 968, 970 (Ind. 1988) (noting that election to take against will is a "simple statutory election not subject to litigation."); *Miller v. Stephens*, 158 Ind. 438, 849, 63 N.E. 847 (1902) (noting that right of election is "purely statutory" and conditioned only upon its "timely and solemn execution" as prescribed by the legislature).

[31]     Under the circumstances presented, it is evident that the trial court misinterpreted the law in denying Dipa's motion to amend. This misinterpretation, coupled with the stated policy of this Court and our supreme court "to freely allow such amendments in order to bring all matters at issue before the court" persuades us to conclude that an abuse of discretion occurred. *Rusnak v. Brent Wagner Architects*, 55 N.E.3d 834, 843 (Ind. Ct. App. 2016) (quoting *Kreilein v. Common Council of City of Jasper*, 980 N.E.2d 352, 358 (Ind. Ct. App. 2012)), *trans. denied*. As the impact of Dipa's valid statutory election was an issue between the parties that needed to be addressed moving forward, the trial court should have granted the motion to amend to bring all matters at issue before it. Thus, we conclude that the trial court abused its discretion in denying Dipa's motion to amend her petition to docket the Trust.

## Section 3 – Genuine issues of material fact remain regarding the validity of the Trust.

[32]     Dipa maintains that while summary judgment in Mili's favor was improvidently granted, summary judgment in her favor is appropriate. Specifically, she contends that she is entitled to reach the assets in the Trust to satisfy her elective share as a matter of law. We think genuine issues of material fact remain.

[33]     As already stated above, in determining the net estate of the deceased spouse for the purpose of computing the amount due the surviving spouse electing to take against the will, the court considers only such property as would have passed under the laws of descent and distribution. Ind. Code § 29-1-3-1(a). A

valid inter vivos trust does not pass under the laws of descent and distribution and thus does not become part of the decedent's probate estate. *Dunnewind*, 697 N.E.2d at 488-89. Accordingly, "there is no right in the surviving spouse to any of the assets of that trust to satisfy an elected distributive share at the settlor's death." *Id.* (quoting *Leazenby v. Clinton Cty. Bank & Trust Co.*, 171 Ind. App. 243, 248, 355 N.E.2d 861, 864 (1976)).

[34] An invalid inter vivos trust, however, such as one which is testamentary in effect, will not withstand a surviving spouse's election. *Id.* at 490. Indeed, "[w]hen a testator executes a trust in contemplation of his impending death and does so in order to defeat the surviving spouse's statutory share, the trust will be considered testamentary in nature and will not defeat the spouse's share." *In re Estate of Weitzman*, 724 N.E.2d 1120, 1123 (Ind. Ct. App. 2000). In other words, a settlor may not devise a means to defeat his spouse's elective share in contemplation of his death. *Dunnewind*, 697 N.E.2d at 489.

[35] The question of whether a testator has established a trust in contemplation of death and with the intent of defeating his surviving spouse's statutory share is a fact-sensitive inquiry. *See Estate of Weitzman*, 724 N.E.2d at 1124. This is a question that the trial court has not yet considered, and one that the parties have not had a full opportunity to explore. Contrary to Dipa's arguments, she is not somehow automatically entitled to invade the Trust assets to satisfy her statutory election simply because we have found her election timely and permitted her proposed second amended petition. As noted by Mili, Dipa conceded in her motion to reconsider that at least some additional discovery

would be necessary by both parties in the event she was permitted to amend her petition to docket the Trust. Appellant's App. Vol. 3 at 158. We agree with Mili that genuine issues of material fact remain, thus precluding summary judgment.

[36] In sum, we affirm partial summary judgment on the narrow issue determined by the trial court that the Trust is the proper beneficiary of the IRA. We conclude that Dipa made a timely election against the Will, and that the trial court abused its discretion in denying her motion to amend her petition to docket the Trust to bring all issues between the parties before the court. Because genuine issues of material fact remain regarding the impact of the timely statutory election on the Trust assets, we remand for further proceedings consistent with this opinion.

[37] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Mathias, J., concur.